## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

Affirmed.

Wright, J., participating on briefs.

———————————

State of Nebraska, appellee, v.
Terrell T. Thorpe, appellant.
___ N.W.2d ___

Filed February 13, 2015.    No. S-14-495.

1.  **Postconviction: Appeal and Error.** Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law.
2.  **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion.
3.  **Effectiveness of Counsel.** A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.
4.  **Effectiveness of Counsel: Appeal and Error.** When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.
5.  ____: ____. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.
6.  **Postconviction: Appeal and Error.** An appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief.
7.  **Postconviction: Collateral Attack: Appeal and Error.** A defendant cannot use a motion for postconviction relief to collaterally attack issues that were decided against him or her on direct appeal.
8.  **Postconviction: Appeal and Error.** A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased.
9.  **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.
10. **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

11.  ____: ____: ____. To show prejudice under the prejudice component of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test, the petitioner must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.

12.  **Proof: Words and Phrases.** A reasonable probability is a probability sufficient to undermine confidence in the outcome.

13.  **Postconviction: Constitutional Law: Proof.** A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.

14.  **Postconviction: Proof.** If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.

15.  **Criminal Law: Aiding and Abetting.** Aiding and abetting is simply another basis for holding an individual liable for the underlying crime.

16.  ____: ____. By its terms, Neb. Rev. Stat. § 28-206 (Reissue 2008) provides that a person who aids or abets may be prosecuted and punished as if he or she were the principal offender.

17.  **Aiding and Abetting: Proof.** Aiding and abetting requires some participation in a criminal act and must be evidenced by some word, act, or deed.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed.

Terrell T. Thorpe, pro se.

Jon Bruning, Attorney General, and George R. Love for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Wright, J.

## I. NATURE OF CASE

Terrell T. Thorpe appeals the order of the district court which overruled his amended motion for postconviction relief without an evidentiary hearing. We affirm the judgment of the district court.

## II. SCOPE OF REVIEW

[1,2] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. *State v. Phelps*, 286

Neb. 89, 834 N.W.2d 786 (2013). When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion. *Id.*

[3-5] A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Robinson*, 287 Neb. 606, 843 N.W.2d 672 (2014). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *Robinson, supra*.

## III. FACTS

### 1. Trial Proceedings and Direct Appeal

After a jury trial, Thorpe was convicted of two counts of first degree murder and two counts of use of a weapon to commit a felony for his involvement with the shooting deaths of Kevin Pierce and Victor Ford. Thorpe was sentenced to life imprisonment without parole on each count of first degree murder and 30 to 40 years' imprisonment and 40 to 50 years' imprisonment on the counts of use of a weapon to commit a felony. All four of his sentences were ordered to be served consecutively.

On direct appeal, we affirmed Thorpe's convictions and sentences on the weapons charges and his convictions on the murder charges. See *State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010). But we vacated Thorpe's sentences of life imprisonment without parole for the murder charges, because life imprisonment without parole was not a valid sentence for first degree murder in Nebraska. See *id.* We remanded the cause with directions to "sentence Thorpe to life imprisonment on both murder charges." See *id.* at 27, 783 N.W.2d at 763.

Thorpe was represented by the same attorney at trial and on direct appeal.

## 2. Postconviction Proceedings

In December 2011, Thorpe filed an amended pro se motion for postconviction relief. He claimed ineffective assistance of trial counsel, prosecutorial misconduct, convictions based on insufficient evidence, abuse of discretion by the trial court, and ineffective assistance of appellate counsel.

Thorpe alleged his trial counsel was ineffective for (1) not obtaining an independent forensic pathologist expert to rebut the testimony of the State's forensic pathologist expert, (2) not requesting a scientific evaluation of all latent fingerprints, (3) not requesting independent forensic testing of the physical evidence, (4) not requesting independent DNA testing of three pieces of physical evidence, (5) not interviewing and investigating certain named individuals who might have been called as witnesses, (6) not investigating the possibility that someone other than Thorpe committed the murders, (7) not objecting to or moving to quash counts I and III of the second amended information, and (8) not objecting to jury instructions Nos. 4, 6, and 14.

Thorpe alleged that certain comments made by the State during opening and closing arguments amounted to prosecutorial misconduct. He claimed that his convictions were based on insufficient evidence, because the State "failed to prove that the Manner of Deaths were Certified as Homicides." And he claimed that the trial court abused its discretion in instructing the jury and in not rendering a "judgment of guilt." Finally, Thorpe alleged that his appellate counsel was ineffective for failing to raise on direct appeal the aforementioned claims of ineffective assistance of trial counsel, prosecutorial misconduct, insufficient evidence, and abuse of discretion by the trial court.

On May 15, 2013, the State moved to dismiss Thorpe's amended motion without an evidentiary hearing. The State was given 30 days to submit a brief, and Thorpe had 45 days from his receipt of the State's brief to submit his own brief. The State did not submit a brief.

In February 2014, Thorpe filed a "Motion in Opposition to Plaintiff[']s Motion to Dismiss Amended Motion for

Postconviction Relief and Request for Default Judgment." He asked the district court to consider two additional ineffective assistance of trial counsel claims that were not included in his amended motion for postconviction relief. These new claims related to trial counsel's alleged failure to request the appointment of a special prosecutor and to "challenge the statements and testimony of [Taiana] Matheny." (Taiana Matheny participated in the murders and was one of the State's witnesses at Thorpe's trial.) Thorpe also requested that the court "enter a judgment of default against the plaintiff, for failure to respond as instructed by the Court." Although Thorpe claims that he requested a hearing on his motion, the record does not show that he did. The court did not explicitly rule on Thorpe's motion.

### 3. Denial of Postconviction Relief

On May 15, 2014, the district court denied Thorpe's amended motion for postconviction relief without an evidentiary hearing. It concluded that Thorpe's ineffective assistance of trial counsel claims failed to allege prejudice.

> [Thorpe's] claims of ineffective assistance of counsel do not include a single fact or allegation with regard to prejudice actually occurring. Rather than provide specific facts as to how the outcome of the trial would have been different, [Thorpe] makes conclusory statements that if trial counsel would have done the things as set forth above, the jury would have found him not guilty.

> [Thorpe] fails to provide any information as to how these alleged deficiencies would have change[d] the outcome of the jury verdicts of guilty. [Thorpe] just lists a number of things that he felt his trial counsel should have done.

The district court concluded that the State had not engaged in prosecutorial misconduct and that the trial court had not abused its discretion in the ways alleged by Thorpe. It found no merit to Thorpe's claim that in the absence of proof that the deaths were certified as homicides, the evidence was insufficient to convict him. And the court determined that Thorpe's appellate

counsel was not ineffective, because there was no merit to the allegations of ineffective assistance of trial counsel. Thorpe timely appeals.

## IV. ASSIGNMENTS OF ERROR

Thorpe assigns, restated, that (1) the trial court erred by failing to allow certain hearsay testimony by an Omaha police officer; (2) trial counsel was ineffective for failing to move the trial court to allow certain hearsay testimony by that same officer; (3) the trial court erred by giving jury instruction No. 14, despite *State v. Taylor*, 282 Neb. 297, 803 N.W.2d 746 (2011); (4) trial counsel was ineffective for failing to object to jury instruction No. 14; (5) the trial court erred by failing to instruct the jury on felony murder; (6) the district court erred by failing to determine that his trial counsel was ineffective for failing to interview and call several witnesses to testify; (7) the trial court erred by allowing the State to vouch for the credibility of its witnesses; (8) the prosecution engaged in misconduct by making false and misleading statements about one of the State's witnesses during closing arguments; (9) the trial court erred by failing to instruct the jury about jailhouse informants; (10) trial counsel was ineffective for failing to propose a jury instruction on jailhouse informants; (11) the trial court erred by convicting Thorpe on insufficient evidence; and (12) the district court erred in failing to consider Thorpe's motion in opposition to the State's motion to dismiss when rendering its decision to deny postconviction relief.

## V. ANALYSIS

Thorpe's amended motion for postconviction relief contains numerous claims which he does not raise on appeal. The claims to which Thorpe does not assign error include the claims of ineffective assistance of trial counsel for not obtaining an independent forensic pathologist expert; not requesting the independent scientific evaluation, forensic testing, or DNA testing of latent fingerprints and physical evidence; not investigating the possibility that someone other than Thorpe committed the murders; not interviewing and investigating certain

individuals; and not moving to quash counts I and III of the second amended information. Thorpe does not assign error to his claims of ineffective assistance of appellate counsel or to his claim that the trial court erred in not rendering a "judgment of guilt."

To be considered by an appellate court, an appellant must both assign and specifically argue any alleged error. *State v. Rodriguez*, 272 Neb. 930, 726 N.W.2d 157 (2007). Accordingly, our consideration of Thorpe's amended motion for postconviction relief is limited to those claims for relief which Thorpe assigns as error and argues on appeal. We address these claims in the order in which they are raised by Thorpe in his brief.

### 1. First and Second Assignments of Error

[6] Thorpe assigns that the trial court erred in failing to allow certain hearsay testimony by an Omaha police officer and that his trial counsel was ineffective for failing to move the trial court to allow this testimony. But Thorpe did not raise either of these claims in his amended motion for postconviction relief. An appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief. *State v. Haas*, 279 Neb. 812, 782 N.W.2d 584 (2010). Therefore, we do not consider these allegations.

### 2. Third Assignment of Error

[7] Thorpe alleges that the trial court erred by giving jury instruction No. 14. He raised this identical claim on direct appeal, and we explicitly found that the trial court "did not err in giving instruction No. 14." See *State v. Thorpe*, 280 Neb. 11, 25, 783 N.W.2d 749, 762 (2010). A defendant "cannot use a motion for postconviction relief to collaterally attack issues that were decided against him on direct appeal." See *State v. Dunster*, 278 Neb. 268, 278, 769 N.W.2d 401, 410 (2009). Therefore, Thorpe's third assignment of error is without merit.

### 3. Fourth Assignment
### of Error

Thorpe alleges that his trial counsel was ineffective for failing to object to jury instruction No. 14. Although as raised, this claim is not procedurally barred, Thorpe is not entitled to relief. The record affirmatively shows that during the jury instruction conference, Thorpe's trial counsel objected to jury instruction No. 14. Furthermore, on direct appeal, we found that there was sufficient evidence to support the giving of jury instruction No. 14. See *Thorpe, supra*. We find no merit to this assignment of error.

### 4. Fifth Assignment
### of Error

[8] Thorpe alleges that the trial court erred by failing to instruct the jury on felony murder. Because this claim is based on actions or inactions that occurred in open court, Thorpe would have known of such claim at the time the jury instructions were given and could have raised the claim on direct appeal. A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased. *State v. Boppre*, 280 Neb. 774, 790 N.W.2d 417 (2010). Therefore, this assignment of error lacks merit.

### 5. Sixth Assignment
### of Error

Thorpe assigns that the district court erred by failing to determine that his trial counsel was ineffective for not interviewing and calling 10 witnesses to testify: James Pierce, Brandi Ford, Tiffany Ross, Orlando Cortez Burries, Aries Rosario, Teara Holman, Joshua Smithhistler, Maurice Gresham, Robert Laney, and Jamme Alexander.

There are allegations in Thorpe's amended motion for postconviction relief which correspond to nine of these witnesses. However, Thorpe's amended motion did not allege that his trial counsel was ineffective for failing to call Gresham. As noted previously, we will not consider "a question not presented to

the district court for disposition through a defendant's motion for postconviction relief." See *Haas*, 279 Neb. at 817-18, 782 N.W.2d at 589. Therefore, under this assignment of error, we consider Thorpe's allegations with respect to only those nine witnesses which were included both in his amended motion and in his brief on appeal.

[9-12] In considering Thorpe's claims as to these nine witnesses, we apply well-known legal principles. A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *State v. Baker*, 286 Neb. 524, 837 N.W.2d 91 (2013). To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *Baker, supra*. To show prejudice under the prejudice component of the *Strickland* test, the petitioner must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. See *id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

[13,14] A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *State v. Phelps*, 286 Neb. 89, 834 N.W.2d 786 (2013). If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id*. Thus, in a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief. See *id*.

### (a) Thorpe's Allegations

In Thorpe's amended motion for postconviction relief, he alleged how James Pierce, Brandi Ford, Ross, Burries, Rosario, Holman, Smithhistler, Laney, and Alexander would have testified if they had been called as witnesses. With regard to each witness, Thorpe alleged that his or her testimony "likely would have resulted in [Thorpe's] acquittal."

### *(i) James Pierce*

Thorpe alleged that James Pierce "had information that there was a possibility that Pacedeon Birge 'Pacey,' rather than [Thorpe] committed the murder of Kevin Pierce." James Pierce would have testified that "'Pacey' was the type of person that would do something like this . . . in order to exact revenge on [James Pierce] for shooting [Pacey's] brother."

### *(ii) Brandi Ford*

Thorpe alleged that Brandi Ford "had information that there was a possibility that 'Pacey' rather than [Thorpe], committed the murder of Kevin Pierce." Specifically, Ford would have testified that she "had heard on the streets that 'Pacey' was telling people that it was going to be a 'Brother for Brother' eversince [sic] 'Pacey's['] brother had been killed by James Pierce." Ford also had heard from her friend "Travis" that another individual once threatened "to have Pacey shoot [Travis] in the head, like [Pacey] did Kevin Pierce."

### *(iii) Tiffany Ross*

Thorpe alleged that Ross "had information that there was a possibility that 'Pacey' rather than [Thorpe], committed the murder of Kevin Pierce." Ross would have testified that Kevin Pierce told her about two separate instances in which Pacey told Kevin Pierce that "he was going to kill him." Ross also would have testified that Kevin Pierce told her that "'Pacey' was out to get him and would kill him" and that "the animosity between 'Pacey' and [Kevin] Pierce, was that [Kevin] Pierce's brother James [Pierce], had killed Pacey's younger brother."

### (iv) Orlando Cortez Burries

Thorpe alleged that Burries "had information that there was a possibility that 'Pacey,' rather than [Thorpe], committed the murder of Kevin Pierce." Burries would have testified that "a party named 'Pacey' had called [Kevin Pierce's] cellphone approximately three years ago and told him 'just like James [Pierce] killed my little brother, I'm gonna kill the youngest[']'" and that "Pacey also told James [Pierce] that he was going to do that."

### (v) Aries Rosario

Thorpe alleged that Rosario "had information that there was a possibility that 'Pacey,' rather than [Thorpe], committed the murder of Kevin Pierce." Rosario would have testified that "Pacey told her, 'I want James [Pierce] because I'am [sic] going to do James [Pierce] like he did me" and that "Pacey then started talking about killing [James Pierce's] little brother." Rosario also would have testified that she "remembered a statement Pacey made to her as 'somebody is going, going to die. I'm going to kill somebody.'"

### (vi) Teara Holman

Thorpe alleged that Holman "had information that there was a possibility that 'Duall' (Charles Brooks) rather than [Thorpe], committed the murder of Victor Ford." Holman would have testified that Ford "had been fighting with 'Duall'" and that she "believed that 'Duall' may have had something to do with Ford's death."

### (vii) Joshua Smithhistler

Thorpe alleged that Smithhistler "had information that there was a possibility that [Kevin Pierce's girlfriend's] mother's boyfriend, rather than [Thorpe] committed the murder." Smithhistler would have testified that at various times, Kevin Pierce stated that he got a "bite mark on his neck" from "his girlfriend" and that "his girlfriend was holding a knife on him." Smithhistler also would have testified that on separate occasions, he observed Pierce arguing with "his girlfriend"

and with an individual that Pierce "said was his girlfriend's mother's boyfriend."

### (viii) Robert Laney

Thorpe alleged that Laney "made phone contact with a party who had information that there was a possibility that Charles Brooks 'Doall', rather than [Thorpe], committed the murder of Victor Ford." Thorpe claimed that Laney had spoken with James Pierce, Brandi Ford, Ross, Burries, Rosario, Holman, and Smithhistler, and that they told Laney the information which we described above when discussing each of these witnesses.

### (ix) Jamme Alexander

Thorpe alleged that Alexander "would have negated Matheny's testimony."

### (b) Analysis

Of these nine witnesses, Thorpe alleged that all of them except Alexander would have testified to the "possibility" that someone other than Thorpe committed the murders for which he was convicted. Even if we were to assume, without deciding, that Thorpe's trial counsel was deficient for failing to present the testimony of these eight witnesses, Thorpe cannot establish that he was prejudiced by that failure. To show prejudice, the defendant must demonstrate reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Morgan*, 286 Neb. 556, 837 N.W.2d 543 (2013).

Thorpe was convicted on the theory that he aided and abetted Terry Sellers and Matheny. The State's evidence established that Matheny shot Kevin Pierce and that Sellers shot Victor Ford. The evidence showed that in both cases, the victim was shot and killed during an armed robbery.

[15-17] Aiding and abetting is simply another basis for holding an individual liable for the underlying crime. *State v. Foster*, 286 Neb. 826, 839 N.W.2d 783 (2013). "By its terms, [Neb. Rev. Stat.] § 28-206 [(Reissue 2008)] provides that a

person who aids or abets may be prosecuted and punished as if
he or she were the principal offender." *State v. McGuire*, 286
Neb. 494, 520, 837 N.W.2d 767, 790 (2013). We have stated
that aiding and abetting requires some participation in a crimi-
nal act and must be evidenced by some word, act, or deed. *Id*.
Mere encouragement or assistance is sufficient. *Id*.

At trial, Matheny testified that Thorpe participated in
the robberies and murders of Kevin Pierce and Victor Ford.
Matheny stated that Thorpe helped to develop the plan to rob
Pierce, that Thorpe supplied a rifle and revolver to use in the
robbery, and that he loaded the gun which Matheny used to
shoot Pierce. When Pierce arrived to meet up with Matheny,
Thorpe approached Pierce with a firearm and led Pierce to
the location where he was shot. After Matheny shot Pierce,
Thorpe drove Pierce's vehicle away from the scene and later
removed the wheel rims from the vehicle.

Matheny testified that the following night, she, Sellers,
and Thorpe engaged in a similar scheme to rob Victor Ford.
She stated that Thorpe talked to Ford on a cell phone and
that Thorpe drove Sellers and Matheny to the location where
they were supposed to meet Ford. As was the case with Kevin
Pierce, Thorpe provided the gun which was used to shoot Ford
and was present when Sellers shot Ford. After they took Ford's
vehicle, Thorpe instructed Matheny to wipe it clean of finger-
prints. And once they abandoned Ford's vehicle, Thorpe drove
Sellers and Matheny back to their hotel.

Given this powerful direct evidence against Thorpe, there is
not a reasonable probability that the result of his trial would
have been different if his trial counsel had called James Pierce,
Brandi Ford, Ross, Burries, Rosario, Holman, Smithhistler, and
Laney to testify. These eight witnesses allegedly would have
testified to the "possibility" that someone other than Thorpe
committed the murders of Kevin Pierce and Victor Ford. In
other words, their testimony would have been speculative as
to any connection between another individual and the murders.
As set forth, much of the testimony would have been hearsay
or hearsay within hearsay. None of these witnesses would

have given direct evidence that someone other than Thorpe committed the murders. Such testimony would not be able to overcome the direct evidence and eyewitness testimony that Thorpe was involved in the robberies and murders of Kevin Pierce and Victor Ford.

Thorpe cannot show that he was prejudiced by his trial counsel's failure to call James Pierce, Brandi Ford, Ross, Burries, Rosario, Holman, Smithhistler, and Laney. Therefore, Thorpe's claims as to these eight witnesses did not contain factual allegations which, if proved, would entitle Thorpe to postconviction relief for ineffective assistance of counsel. The district court did not err in denying relief on these claims without an evidentiary hearing.

As to the ninth witness, Thorpe alleged that Alexander "would have negated Matheny's testimony." Thorpe did not allege what testimony Alexander would have given if called or what part of Matheny's testimony would have been negated. In assessing postconviction claims that trial counsel was ineffective for failing to call a particular witness, we have upheld the dismissal without an evidentiary hearing where the motion did not include specific allegations regarding the testimony which the witness would have given if called. *State v. Marks*, 286 Neb. 166, 835 N.W.2d 656 (2013). Therefore, Thorpe was not entitled to an evidentiary hearing or postconviction relief on this claim.

The district court did not err in denying relief, without an evidentiary hearing, on Thorpe's claims of ineffective assistance of counsel for failure to call certain witnesses. Thorpe's sixth assignment of error lacks merit.

## 6. Seventh Assignment
### of Error

Thorpe assigns that the trial court erred by allowing the State to vouch for the credibility of its witnesses. This claim is procedurally barred, because Thorpe could have raised it on direct appeal. See *State v. Boppre*, 280 Neb. 774, 790 N.W.2d 417 (2010).

### 7. Eighth Assignment
### of Error

Thorpe argues that the prosecution engaged in misconduct by making false and misleading statements about one of the State's witnesses during closing arguments. Thorpe could have raised this issue on direct appeal. Therefore, this claim is procedurally barred. See *id*.

### 8. Ninth and Tenth Assignments
### of Error

At Thorpe's trial, the jury was not instructed about jailhouse informants. In the instant appeal, Thorpe claims that the trial court erred by failing to do so and that his trial counsel was ineffective for failing to propose such an instruction. Neither of these claims were raised in Thorpe's amended motion for postconviction relief. An appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief. *State v. Haas*, 279 Neb. 812, 782 N.W.2d 584 (2010). Accordingly, we do not consider these allegations.

### 9. Eleventh Assignment
### of Error

Thorpe alleges that the trial court erred by convicting him on insufficient evidence. Thorpe could have raised sufficiency of the evidence on direct appeal, but he did not. This claim is procedurally barred. See *Boppre, supra*.

### 10. Twelfth Assignment
### of Error

Thorpe assigns that the district court erred in failing to consider his motion in opposition to the State's motion to dismiss when rendering its decision to deny postconviction relief. The claims raised in Thorpe's motion in opposition were not pleaded in his amended motion for postconviction relief, which was the operative pleading before the

court. Therefore, the court did not err in denying postconviction relief without considering the claims raised in Thorpe's motion in opposition.

## VI. CONCLUSION

For the foregoing reasons, we affirm the order of the district court which denied Thorpe's amended motion for postconviction relief without an evidentiary hearing.

AFFIRMED.

———————————

STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, RELATOR,
v. DAVID C. HOLCOMB, RESPONDENT.
___ N.W.2d ___

Filed February 13, 2015.    No. S-14-692.

Original action. Judgment of public reprimand.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

PER CURIAM.

## INTRODUCTION

This case is before the court on the conditional admission filed by David C. Holcomb, respondent, on November 13, 2014. The court accepts respondent's conditional admission and enters an order of public reprimand.

## FACTS

Respondent was admitted to the practice of law in the State of Nebraska on October 14, 2008. At all relevant times, he was engaged in the practice of law in Omaha, Nebraska.

On July 31, 2014, the Counsel for Discipline of the Nebraska Supreme Court filed formal charges against respondent. The formal charges consist of one count against respondent. With respect to the one count, the formal charges state that on or about November 6, 2013, respondent posted on a Web site