State of Nebraska, appellee, v.
Dallas L. Huston, appellant.
___ N.W.2d ___

Filed August 28, 2015.    No. S-14-752.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Appeal and Error.** To be considered by an appellate court, an appellant must both assign and specifically argue any alleged error.

3. **Effectiveness of Counsel.** A pro se party is held to the same standards as one who is represented by counsel.

4. **Postconviction: Constitutional Law: Proof.** The Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2008 & Cum. Supp. 2014), provides that postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his constitutional rights such that the judgment was void or voidable. Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.

5. ____: ____: ____. A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.

6. **Postconviction: Proof.** If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.

7. **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.

8. **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

9. ____: ____: ____. To show prejudice under the prejudice component of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.

10. **Proof: Words and Phrases.** A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

11. **Effectiveness of Counsel.** A court may address the two prongs of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test, deficient performance and prejudice, in either order.

12. **Postconviction: Effectiveness of Counsel: Appeal and Error.** A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review.

13. **Effectiveness of Counsel: Appeal and Error.** When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. That is, courts begin by assessing the strength of the claim appellate counsel failed to raise.

14. ____: ____. Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.

15. ____: ____. When a case presents layered ineffectiveness claims, an appellate court determines the prejudice prong of appellate counsel's performance by focusing on whether trial counsel was ineffective under the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test. If trial counsel was not ineffective, then the defendant suffered no prejudice when appellate counsel failed to bring an ineffective assistance of trial counsel claim.

16. **Trial: Attorneys at Law.** The decision whether or not to object has long been held to be part of trial strategy.

17. **Effectiveness of Counsel: Trial.** When reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics.

18. **Effectiveness of Counsel: Presumptions: Appeal and Error.** There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Dallas L. Huston, pro se.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Dallas L. Huston was convicted by a jury of second degree murder and sentenced to 50 years' to life imprisonment. We affirmed his conviction and sentence on direct appeal. See *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013) (*Huston I*). On January 17, 2014, Huston filed a pro se motion for postconviction relief in the district court for Lancaster County, claiming ineffective assistance of trial and appellate counsel. On June 9, the State filed its response and motion to deny an evidentiary hearing. On July 28, the district court filed an order which denied Huston's motion for postconviction relief without an evidentiary hearing. Huston appeals. We determine that the district court erred when it denied Huston an evidentiary hearing on his claim that his trial counsel was ineffective for failing to object to the admission of exhibits 38, 81, and 95, and we reverse the decision of the district court on this point and remand the cause for an evidentiary hearing on this single claim. In all other respects, the decision of the district court is affirmed.

## STATEMENT OF FACTS

After a jury trial, Huston was convicted of second degree murder and sentenced to imprisonment for 50 years to life. We affirmed his conviction and sentence on direct appeal. See *Huston I*. A full recitation of the facts can be found in our opinion of the direct appeal in *Huston I*, and we quote pertinent portions below.

Huston and Ryan Johnson were "living together as a couple in a nonsexual relationship," when in September 2009, Huston allegedly found Johnson in their bedroom with plastic wrap wrapped around his face. *Huston I*, 285 Neb. at 12, 824 N.W.2d at 728. Huston called the 911 emergency dispatch service. Paramedics performed lifesaving measures, but they were unable to revive Johnson. As part of the investigation of Johnson's death, law enforcement interviewed Huston numerous times. During the interviews, Huston took varying positions about his involvement in Johnson's death. Also during the interviews, Huston's multiple personalities emerged, one of whom was called Vincent. Huston later admitted at trial that "he made up these different personalities as part of a 'social experiment' and that he controlled them completely." *Id*. at 13, 824 N.W.2d at 728.

Huston had told his friends, Nicholas Berghuis and Christopher Wilson, that one of his "personalities" had been involved in Johnson's death. Berghuis and Wilson arranged with the police to set up video surveillance in Wilson's house, and Huston's conversations with Berghuis and Wilson on October 6 and 7, 2009, were recorded. In *Huston I*, we stated:

> During these conversations, Huston's various personalities admitted that "Vincent" assisted in Johnson's death at Johnson's request. Specifically, the personality "Vincent" admitted to (1) wrapping the plastic wrap around Johnson's face, during which time Johnson yelled, "Get it off"; (2) holding a pillow over Johnson's face when Johnson broke through the plastic wrap while

trying to breathe; and (3) listening to Johnson's last heartbeats "with enjoyment."

285 Neb. at 13-14, 824 N.W.2d at 728.

We repeat *Huston I* at length wherein we quoted from the trial testimony and stated:

Prior to trial, Huston filed a motion requesting the district court to redact the video recordings of his police interviews. The State agreed with some of the proposed redactions, and the court ruled on the proposed redactions to which the parties did not agree. Some of Huston's proposed redactions were sustained, but others were not. After receiving the court's rulings, the State edited the video recordings to reflect the redactions that had been agreed to by the State or ordered by the court. These video recordings were admitted into evidence at Huston's subsequent trial and were published to the jury. When asked whether there were any objections to the admission of these video recordings, Huston's counsel responded by stating that he had either no objection or no "further" objection.

The testimony at trial included both the video recordings of Huston's police interviews—including the proposed redactions that were not sustained—and testimony from the police officers who had conducted those interviews. Of this plethora of evidence, we mention only the nine specific portions that have been identified by Huston on appeal. These segments include evidence relating to (1) Huston's "homosexual encounter" with Wilson, (2) speculation that Huston is a serial killer and Huston's future dangerousness, and (3) the opinions of police officers that Huston's actions constituted murder as opposed to assisted suicide.

First, in the video recording of Huston's interview with the police on the day of Johnson's death, Huston described his "homosexual encounter" with Wilson. Huston's conversation with the police officer conducting the interview went as follows:

"[Huston:] Okay, to be completely honest, me and [Wilson] were together once. Only once. Um, it's how it came out to [Johnson] that we might have been interested in each other, but [Wilson] decided he didn't want to do that.

"[Police officer:] Okay, and was this early in your relationship with [Johnson]? Or—

"[Huston:] [Interrupting.] Oh, no, no. . . . [Wilson] is only been back around—. See, [Wilson] has only been back in the picture as a friend of ours for like a month. . . . I believe in being upfront. Yes, one time and only one time me and [Wilson] were together and we—. Well, we went to bed together, and—

"[Police officer:] [Interrupting.] How long ago was that?

. . . .

"[Huston:] . . . Three weeks ago.

"[Police officer.] So, it is pretty recent, then.

"[Huston:] Yep. . . . You probably don't want to hear this, but me and [Johnson] had kind of a unique relationship. . . . I know it's kind of a weird situation to be in [be]cause in the 4 years of our relationship, there was never anything sexual. Um, and we allowed ourselves . . . an 'open relationship.' We allowed ourselves what he'd call '[expletive] buddies.' . . . That one and only one time that me and [Wilson] ended up . . . was kind of a 'heat of the moment,' you know, 'spur of the moment' type thing. . . . We ended up in bed together. We kissed. We, we made out. But it never went anywhere further than that."

While this was the only evidence of the "homosexual encounter" with Wilson, Huston's physical attraction to Wilson was referenced in several of the other video recordings received into evidence at trial. In every case, the evidence related to Wilson was received into evidence without objection from Huston's trial counsel.

Second, in the video recording of Huston's October 10, 2009, interview with the police, Huston and Sgt. Gregory Sorensen of the Lincoln Police Department discussed serial killers, the possibility that Huston was a serial killer, and Huston's future dangerousness. The dialog went as follows:

"[Huston:] . . . This is what I meant, though, when I've told everybody that I want to get help. I never thought this could happen, and now that this has happened, I am so scared that I'm capable of doing it again.

"[Sorensen:] Yeah, I think that that's probably really true.

"[Huston:] And that scares me to death because, like I said, I have never thought of myself as a violent person, and now I don't know what to think of myself.

"[Sorensen:] Well, especially when you consider that you have urges to kill the people that you're attracted to.

"[Huston:] And I've done everything that I could for the last, you know . . . . You know, the earliest memories of this I have are, say, 9, 10 years old. So 18 years I have fought myself.

"[Sorensen:] But most serial killers do the same thing at some point in time.

"[Huston:] Oh, wow.

"[Sorensen:] At some point in time, they crossed that line. I mean, when you talk about—

"[Huston:] [Interrupting.] I've asked myself that.

"[Sorensen:] Whether you're a serial killer?

"[Huston:] Uh-hum [yes]. I've asked myself that . . . . You've asked me if I have been suicidal in the past.

"[Sorensen:] Yeah.

"[Huston:] To be completely honest, I lied to you. Because of this, I have been. I have thought about killing myself so I wouldn't hurt anyone." Later in the same interview, Huston stated, "I am so scared now that this could happen again."

Although not raised by Huston on appeal, at other times during the video recordings of his interviews with the police, he expressed a fear that he might commit homicide again. All of this evidence of Huston's future dangerousness was received into evidence at trial without objection.

Finally, the video recordings of Huston's police interviews referenced the opinion of the police that Huston committed murder as opposed to assisted suicide. On appeal, Huston identified four segments in which this opinion was expressed. Two of these segments were from Huston's interview with the police on October 7, 2009. During this interview, Huston engaged in the following dialog with Sorensen:

"[Sorensen:] . . . [Y]ou or Vincent were the person or persons that killed [Johnson]. And maybe at the time, it started out as a suicide, but it didn't end that way. It just didn't end that way.

"[Huston:] See, I don't believe that.

"[Sorensen:] You don't believe that it didn't end in a homicide?

. . . .

"[Huston:] No, I don't.

. . . .

"[Huston:] They asked me that. They asked me that. Did he fight? Did he—

"[Sorensen:] [Interrupting.] He doesn't have to fight. [All] he had to do was break the seal. [All] he had to do was try to breathe, and . . . that was his intent to stay alive—he tried to breathe." Later in the same interview, Sorensen stated: "[W]hen you put the pillow over his face, you're killing him. He's not killing himself. You're killing him."

Huston identified two more similar comments made by Sorensen in the video recordings, the first during the interview with Huston on October 8, 2009, and the

second during the October 10 interview. On October 8, Sorensen said the following:

"You made a pact to commit suicide. When he started to breathe, you put the pillow over the face, which was a continuation of the act. But, say I have a gun in my hand, and say that I want to commit suicide. And so I put it to my head, but before I pull the trigger, I put the gun down. That stops me from committing suicide. Think of this: [Johnson] didn't get a chance. [Johnson] didn't get a chance to make that decision. You made it for him, with the pillow. . . . You know I'm right. He didn't get that chance. He did not get a chance." On October 10, Sorensen and Huston engaged in the following dialog after Huston asserted that he "didn't murder [Johnson]":

"[Sorensen:] But I don't know how else you can describe it, [Huston]. . . . This isn't assisting a suicide. This, this is just not assisting a suicide. . . . I don't know if you can understand this, but if [Johnson] looks at me right now and he says, 'I can't take it anymore. You got to kill me,' and I pull a gun out and I shoot him dead—

"[Huston:] [Interrupting.] You've tried to say that before and I do understand what you mean.

"[Sorensen:] [Johnson's] just asked me to kill him and I don't have that right to do that. He can ask me all he wants, but I don't have the right to do it. And this isn't any different . . . . I know that you think that it is, but it's not." The video recordings, including all of the afore-mentioned evidence that the police believed Huston committed murder, were received at trial and published to the jury without objection by Huston's counsel.

The various police officers present for Huston's interviews also testified at trial. Both Sorensen and Sgt. Kenneth Koziol, also of the Lincoln Police Department, testified before the jury, and each stated that, in his opinion, Huston committed murder. While on the stand, Sorensen explained that he called the Lancaster County Attorney during the investigation of Johnson's death

"because at that point we no longer had any type of assisting a suicide . . . . So I wanted to inform the county attorney that this was a murder case." And when asked why the police were "a little bit more confrontational" when questioning Huston on October 7, 2009, Koziol explained that by that time they were "pretty confident that it [was] a homicide. We [felt] that . . . Huston caused . . . Johnson's death . . . ." Huston's counsel made no objection to these statements at trial.

Although not identified by Huston on appeal, there were numerous other instances during trial when similar opinion evidence was received into evidence. In none of these instances did Huston's counsel object.

285 Neb. at 14-19, 824 N.W.2d at 729-32.

Huston had different counsel for his direct appeal than he had had as trial counsel. In his direct appeal, Huston assigned that the district court erred when it admitted evidence "(1) of Huston's 'homosexual encounter' with Wilson; (2) of the discussion relating to serial killers, speculation that Huston is a serial killer, and Huston's future dangerousness; and (3) of the opinions of police officers that Huston's actions constituted murder as opposed to assisted suicide." *Id*. at 19, 824 N.W.2d at 732.

Huston's argument on direct appeal related to certain statements in video recordings of the police interviews, marked as exhibits 38 (September 16, 2009), 81 (October 7), and 95 (October 10), that the district court did not order redacted. These exhibits contain the material that form the basis, in part, of Huston's motion for postconviction relief currently under consideration.

In *Huston I*, we noted that when the State offered exhibits 38, 81, and 95 at trial, the district court specifically asked Huston whether he had any objections, and Huston's counsel responded that he had "'[n]o further objection . . . .'" 285 Neb. at 20, 824 N.W.2d at 732. Huston contended these responses were sufficient to preserve for appeal any error that

resulted from admitting these video exhibits into evidence. We determined that, despite the filing of his pretrial motion to redact, Huston was required to object at trial to those portions of the interviews the district court refused to order redacted and that trial counsel's responses of "no further objection" were not sufficient to preserve the issue for appeal. We concluded that "[b]ecause Huston did not object to exhibits 38, 81, and 95—or any allegedly inadmissible statements contained therein—when they were offered into evidence at trial, any evidentiary error that resulted from admitting these exhibits into evidence was not preserved for appeal." *Id*. at 28, 824 N.W.2d at 737.

In *Huston I*, we went on to state that "[a]nticipating our conclusion that Huston did not preserve for appeal any error relating to the admission of exhibits 38, 81, and 95 into evidence, he argues that his trial counsel was ineffective for failing to preserve these errors for appeal." 285 Neb. at 28, 824 N.W.2d at 737. We determined that the record was insufficient to adequately address on direct appeal whether trial counsel's failure to object denied Huston the effective assistance of counsel. In particular, we stated:

> There is no evidence in the record that would allow us to determine whether Huston's trial counsel consciously chose as part of a trial strategy not to object to the evidence identified on appeal. Therefore, because the record is insufficient to adequately review Huston's claims of ineffective assistance of counsel, we do not reach these claims on direct appeal.

*Id.* at 30, 824 N.W.2d at 738-39. Accordingly, we affirmed Huston's conviction and sentence.

On January 17, 2014, Huston filed a pro se verified motion for postconviction relief alleging 16 claims of reversible error, including numerous claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel. It is the denial of this postconviction motion without an evidentiary hearing which forms the basis of the instant appeal. Huston's

first four allegations were claims of ineffective assistance of trial counsel for failing to preserve issues for appeal by failing to object to exhibits 38, 81, and 95, which included statements regarding Huston's "homosexual encounter" with Wilson, Sorensen's speculation that Huston is a serial killer, and Sorensen's opinion that Huston committed murder rather than assisted suicide. Huston alleged that he was prejudiced because had his trial counsel made the proper objections, the evidence would not have been admitted into evidence and he would not have been convicted, or we would have considered his claims on direct appeal, leading to a reversal.

Huston next alleged that his trial counsel was ineffective for failing to object to the admission of the video recording of his conversations with Berghuis and Wilson, who were working with law enforcement, because, according to Huston, Berghuis lied to Huston about going to the police. Huston contends that Sorensen testified that confidential informants, such as Berghuis, cannot lie about their involvement with the police if asked. Huston alleged that he was prejudiced because of his trial counsel's failure to object to the admission of this video recording. Huston claimed that his appellate counsel was ineffective for failing to raise the admissibility of the video recording as an issue on direct appeal.

Huston next alleged that his trial counsel was ineffective for failing to challenge the credibility of Berghuis, who provided several conflicting statements. Huston contends that had his trial counsel challenged the credibility of Berghuis, "inadmissible and irrelevant testimony of said witness would have been excluded as unduly prejudicial." Huston further alleged that if trial counsel had made the proper objection, then we would have considered errors on direct appeal. Huston further claimed that his appellate counsel was ineffective for failing to raise this issue on direct appeal.

Huston next alleged that his trial counsel was ineffective for committing "willful misconduct" and that he was prejudiced by his trial counsel's willful misconduct. Huston further

claims that his appellate counsel was ineffective for failing to raise the issue of trial counsel's willful misconduct on direct appeal.

Huston next alleged that his trial counsel was ineffective for failing to raise at trial, "through cross examination, or otherwise," that there were at least two eyewitnesses who contradicted Berghuis' statements who were never spoken to and that there were other witnesses identified after Huston's arrest. Huston contended he was prejudiced because had trial counsel made inquiry and properly objected, we would have considered his claims on direct appeal and the outcome on appeal would have been different. Huston further claimed that his appellate counsel was ineffective for failing to raise this issue on direct appeal.

Huston alleged his trial counsel was ineffective for failing to object at trial regarding the lack of evidence of murder. Huston asserted that he was prejudiced because had trial counsel made the proper argument, we would have considered his claims on direct appeal and the outcome on appeal would have been different. Huston further claimed that his appellate counsel was ineffective for failing to raise this issue on direct appeal.

Finally, Huston alleged that his appellate counsel was ineffective for failing to raise on direct appeal that the district court committed prejudicial error when it instructed the jury that "this is not a death penalty case." Huston alleged that he was prejudiced because had appellate counsel raised this issue, we would have considered it on direct appeal and the outcome on appeal would have been different.

On June 9, 2014, the State filed its response and motion to deny an evidentiary hearing on Huston's motion for postconviction relief. On July 28, the district court filed an order in which it denied Huston's motion for postconviction relief without holding an evidentiary hearing. In its order, the district court determined variously that Huston's allegations were

refuted by the record or were too conclusory to demonstrate a violation of Huston's constitutional rights.

Huston appeals.

## ASSIGNMENT OF ERROR

Huston assigns, restated, that the district court erred when it denied his motion for postconviction relief without holding an evidentiary hearing on his claims of ineffective assistance of trial and appellate counsel.

## STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Cook*, 290 Neb. 381, 860 N.W.2d 408 (2015).

## ANALYSIS

Huston generally claims that the district court erred when it denied his claims of ineffective assistance of counsel without conducting an evidentiary hearing. As an initial matter, we note that although Huston alleged numerous claims of ineffective assistance of counsel and error by the court in his postconviction motion, he argues only four claims in his appellate brief. Huston argues that he received ineffective assistance of counsel when (1) counsel failed to object at trial to the admission of exhibits 38, 81, and 95, which were video recordings regarding Huston's "homosexual encounter" with Wilson, Sorensen's statements speculating that Huston is a serial killer, and Sorensen's opinion that Huston committed murder; (2) counsel failed to object at trial to video recordings of Huston's conversations with Berghuis and Wilson; (3) counsel failed to challenge the credibility of Berghuis; and (4) counsel failed to object and argue that there was insufficient evidence to convict Huston of murder.

[2,3] To be considered by an appellate court, an appellant must both assign and specifically argue any alleged error. *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015). Although we acknowledge that Huston filed his brief pro se, a pro se party is held to the same standards as one who is represented by counsel. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015). Accordingly, our consideration of Huston's motion for postconviction relief is limited to those claims for relief which Huston has both assigned as error and argued on appeal.

*Relevant Law Regarding Postconviction*
*Relief and Ineffective Assistance*
*of Counsel.*

We begin by reviewing general propositions relating to postconviction relief and ineffective assistance of counsel claims before applying those propositions to the claims alleged and argued by Huston in this appeal.

[4] The Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2008 & Cum. Supp. 2014), provides that postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his constitutional rights such that the judgment was void or voidable. *State v. Sanders*, 289 Neb. 335, 855 N.W.2d 350 (2014). Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *Id*.

[5,6] A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *State v. Thorpe, supra*. If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is

entitled to no relief, the court is not required to grant an evidentiary hearing. *Id*.

[7-11] A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *Id*. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Dragon*, 287 Neb. 519, 843 N.W.2d 618 (2014)**.** To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Thorpe, supra*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *State v. Armstrong*, 290 Neb. 991, 863 N.W.2d 449 (2015). A court may address the two prongs of this test, deficient performance and prejudice, in either order. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015).

[12-15] A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review. *Id*. When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. *Id*. That is, courts begin by assessing the strength of the claim appellate counsel failed to raise. *Id*. Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id*. When a case presents layered ineffectiveness claims, we determine the prejudice prong of appellate counsel's performance by focusing on whether trial counsel was ineffective under the

*Strickland* test. *Id*. If trial counsel was not ineffective, then
the defendant suffered no prejudice when appellate coun-
sel failed to bring an ineffective assistance of trial counsel
claim. *Id*.

*Huston's Claim That Trial Counsel Was*
*Ineffective for Failing to Object*
*to Exhibits 38, 81, and 95.*

Huston alleges that he received ineffective assistance of
counsel when his trial counsel failed to object at trial to exhib-
its 38, 81, and 95, which were video recordings of statements
regarding Huston's "homosexual encounter" with Wilson; of
Sorensen's speculation that Huston is a serial killer; and of
Sorensen's opinion that Huston committed murder. We have
recited at length above the nature of the evidence at trial, and
Huston argues generally that the receipt of exhibits 38, 81,
and 95, in the context of this matter, denied him a fair trial.
Huston contends that because his trial counsel failed to object
to exhibits 38, 81, and 95, his trial counsel failed to preserve
for appeal any error relating to the admission of these exhibits.
Huston alleges that he was prejudiced by trial counsel's failure
to object to these exhibits, because consideration of the issues
surrounding the admissibility of exhibits 38, 81, and 95 on
appeal would have changed the result of the appeal. Huston's
allegations of prejudice are sufficient.

We note that in its appellate brief, the State conceded that
"[i]f this court determines that Huston made sufficient allega-
tions of prejudice, then the State submits that the decision of
the district court on these claims [surrounding exhibits 38,
81, and 95] needs to be reversed and the case remanded for
an evidentiary hearing on these claims." Brief for appellee at
10. We determine that the district court erred when it failed
to grant Huston an evidentiary hearing on trial counsel's
failure to object to this evidence in the video recordings. For
completeness, we note that effectiveness of appellate coun-
sel is not implicated in connection with this claim, because

appellate counsel did in fact raise trial counsel's alleged ineffectiveness in this regard. See *Huston I*.

[16-18] On direct appeal, Huston claimed, inter alia, that his trial counsel was ineffective for failing to object to exhibits 38, 81, and 95 and that therefore, his trial counsel was ineffective for failing to preserve for appeal any error relating to the admission of these exhibits. In reviewing these failures to object, we recognized that the decision whether or not to object has long been held to be part of trial strategy. *Huston I*, citing *State v. Lieberman*, 222 Neb. 95, 382 N.W.2d 330 (1986), and *State v. Newman*, 5 Neb. App. 291, 559 N.W.2d 764 (1997), *overruled on other grounds, State v. Becerra*, 253 Neb. 653, 573 N.W.2d 397 (1998). We further recognized that when reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. *Huston I*. See, also, *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013). There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *Id*. See, also, *State v. Armstrong*, 290 Neb. 991, 863 N.W.2d 449 (2015).

Given this deference, we stated in *Huston I* that the question of whether trial counsel's failure to object to exhibits 38, 81, and 95 was part of counsel's trial strategy was essential to the resolution of this ineffective assistance of trial counsel claim. We then stated that there was "no evidence in the record that would allow us to determine whether Huston's trial counsel consciously chose as part of a trial strategy not to object to the evidence identified on appeal." *Huston I*, 285 Neb. at 30, 824 N.W.2d at 738. Thus, "because the record [was] insufficient to adequately review Huston's claims of ineffective assistance of counsel," we could not reach those claims regarding failure to object to exhibits 38, 81, and 95 on direct appeal. *Id*. at 30, 824 N.W.2d at 739.

In *State v. Seberger*, 284 Neb. 40, 815 N.W.2d 910 (2012), we were presented with a procedural situation similar to the instant case. In *Seberger*, the defendant claimed on direct

appeal that his trial counsel was ineffective for failing to properly advise him of his right to testify in his own behalf. We declined to address the issue on direct appeal, because we determined that the record was insufficient to analyze the claim. See *State v. Seberger*, 279 Neb. 576, 779 N.W.2d 362 (2010). Subsequently, the district court denied the defendant's motion for postconviction relief encompassing the advice regarding the right-to-testify issue without holding an evidentiary hearing. In the defendant's appeal from the denial of postconviction relief, we determined that because there was no evidentiary hearing, the record was still insufficient to analyze the defendant's claim of ineffective assistance of counsel. Therefore, we concluded that the district court erred when it failed to grant the defendant an evidentiary hearing on that issue, and we reversed the decision of the district court on this point and remanded the cause for an evidentiary hearing on this allegation.

Similarly, in the present case, after we noted in *Huston I* that we lacked a sufficient record regarding trial counsel's strategy on direct appeal, the district court denied Huston an evidentiary hearing which would have further developed the record with respect to trial counsel's strategy. Thus, there is still no record before us which would permit us to determine whether Huston's trial counsel's failure to object to exhibits 38, 81, and 95 was a strategic decision.

Because it is settled that trial counsel failed to object to the admission of exhibits 38, 81, and 95, as was required to preserve a challenge, and based on our determination that Huston has made sufficient allegations in his postconviction motion of prejudice regarding this issue, the record is still in need of development regarding trial counsel's strategy. Thus, we determine that the district court erred when it failed to grant Huston an evidentiary hearing on this issue, and we reverse the district court's ruling denying this claim without an evidentiary hearing and remand the cause for an evidentiary hearing on this point.

*Huston's Claim That Trial Counsel Was*
*Ineffective for Failing to Object to*
*Video Recordings of Conversations*
*of Huston, Berghuis, and Wilson.*

Huston alleges that he received ineffective assistance of counsel when his trial counsel failed to object to the video recordings of conversations Huston had with Berghuis and Wilson, both of whom were working with law enforcement. In support of his contention, Huston characterizes the record as providing that Berghuis lied to Huston about working with the police and that Sorensen testified that confidential informants, such as Berghuis, cannot lie about their involvement with police. Because the record refutes Huston's claim, no evidentiary hearing was required and the district court did not err when it so ruled.

When asked what Berghuis and Wilson could and could not do as confidential informants, Sorensen testified:

> [Berghuis and Wilson] weren't allowed to say or do anything that myself as a police officer wasn't allowed to do. They couldn't make any promises to . . . Huston that he wouldn't be prosecuted if he made any statements to them. I instructed them that basically they were acting in our behalf, and because they were acting in our behalf anything they said to . . . Huston was like I was saying it to . . . Huston. So we cautioned them about things that they could and couldn't say.

The premise of Huston's argument is belied by the record. Furthermore, the allegations surrounding this claim do not demonstrate a violation of Huston's constitutional rights. Following our examination, we determine that Huston's allegations of trial counsel's purported deficiency are not supported by the record and that appellate counsel was not deficient for not claiming error on appeal.

Therefore, the district court did not err when it denied relief without an evidentiary hearing on Huston's claim that trial counsel was deficient for failing to object to recordings of

Huston, Berghuis, and Wilson, on the basis alleged in Huston's postconviction motion. We affirm this portion of the district court's order.

*Huston's Claim That Trial Counsel Was*
*Ineffective for Failing to Challenge*
*Berghuis' Credibility.*

Huston alleges that his trial counsel was ineffective for failing "to impeach, or otherwise challenge the credibility" of Berghuis. In his motion for postconviction relief, Huston alleged that his trial counsel should have challenged Berghuis' credibility, because "over trial preparation, and at trial . . . Berghuis gave several conflicting statements for the record." The district court correctly rejected this claim.

The records and files in this case refute Huston's allegation. The record shows that Huston's counsel cross-examined Berghuis at trial and that Huston's trial counsel challenged the credibility of Berghuis' direct testimony. The record shows that Huston was not prejudiced by trial counsel's conduct, and appellate counsel was not deficient for not claiming error on appeal. The district court did not err when it denied postconviction relief on this claim without an evidentiary hearing, and we affirm this portion of the district court's order.

*Huston's Claim That Trial Counsel Was*
*Ineffective for Failing to Object*
*to Lack of Evidence.*

Huston alleges that the evidence at trial did not show Johnson was murdered and that there was a lack of physical evidence that showed that Huston murdered Johnson. Huston contends that his trial counsel was ineffective for failing to object to this lack of evidence. The district court correctly rejected this claim.

The records and files in this case refute Huston's allegations. The record shows that after the State rested its case, Huston's trial counsel made a motion to dismiss and argued that the State had failed to make a prima facie case that

Huston was responsible for Johnson's death. At the close of all the evidence, Huston's trial counsel renewed his motion based on "insufficient evidence being adduced in this matter." Trial counsel did not fail to bring the issue of the sufficiency of evidence to the trial court's attention.

With respect to physical evidence, the record shows that Huston's trial counsel cross-examined Sorensen regarding the lack of physical evidence connecting Huston to Johnson's death. In addition, trial counsel argued in closing that there was a lack of physical evidence that Johnson had been murdered. Thus, the matter was developed by trial counsel and brought to the attention of the jury for its consideration.

Given the foregoing, we determine that the records and files in this case affirmatively show Huston was entitled to no relief on this claim and that appellate counsel was not deficient for not claiming error on appeal. The district court did not err when it denied relief on this claim without an evidentiary hearing, and we affirm this portion of the district court's order.

## CONCLUSION

The district court erred when it denied Huston relief without an evidentiary hearing on his claim that his trial counsel was ineffective for failing to object to the admission of exhibits 38, 81, and 95. We reverse the decision of the district court on this point and remand the cause for an evidentiary hearing on this single claim. In all other respects, the decision of the district court is affirmed.

Affirmed in part, and in part reversed and
remanded for further proceedings.

Stephan, J., not participating.