IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BATES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

KEVIN J. BATES, APPELLANT.

Filed November 17, 2015.    No. A-14-1081.

Appeal from the District Court for Dawson County: JAMES E. DOYLE IV, Judge. Affirmed.

James R. Mowbray and Kelly S. Breen, of Nebraska Commission on Public Advocacy, for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

INTRODUCTION

Kevin J. Bates was convicted in the Dawson County District Court of second degree assault, third degree domestic assault, and criminal mischief. He appeals his conviction and sentence of second degree assault, claiming that the district court committed plain error when it allowed a witness to invoke his right against self-incrimination in front of the jury and that he received ineffective assistance of counsel. We find that allowing the invocation in the jury's presence was erroneous, but such error was harmless beyond a reasonable doubt. We also conclude that Bates' trial counsel was not ineffective. We therefore affirm the conviction and sentence.

BACKGROUND

On February 8, 2014, Melissa Callahan, Bates' then girlfriend, went to visit Bates, who was working at his parents' farm. Bates entered Callahan's vehicle and an argument ensued. Callahan claims they argued because she asked him to close the door because she was cold; Bates says he became upset when he noticed "track marks" on Callahan's arm, which he assumed meant she was using methamphetamine (meth) again. Callahan also claims that Bates assaulted her in the vehicle, which Bates denies.

Bates and Callahan were sitting in a vehicle in Bates' parents' driveway when Callahan's friend, Eswin Lopez-Bravo, arrived. Callahan testified at trial that Bates exited the vehicle and approached Lopez-Bravo's car while she waited. She said the men talked briefly and then Bates began punching Lopez-Bravo. Bates, however, claimed that Callahan got out of the vehicle to talk to Lopez-Bravo while he stayed behind. Bates said Callahan and Lopez-Bravo started arguing over what he thought was money. According to Bates, Lopez-Bravo grabbed Callahan, so Bates got out of the vehicle to intervene. Bates saw what he thought was a bag of meth in Lopez-Bravo's hand. Bates claimed that Lopez-Bravo then hit him on the side of the head, so Bates swung back and punched him three times. Bates also punched out the window of Lopez-Bravo's vehicle.

Prior to trial, the State filed a motion in limine asking the court to prohibit Bates from offering testimony or evidence concerning the use or possession of illegal drugs by Callahan or Lopez-Bravo. At a hearing on the motion, Bates argued that the ability to refer to the use of meth was necessary because his theory was that the incident on February 8, 2014 was a drug deal or collection of money that went wrong. He claimed that the relationship between Callahan and Lopez-Bravo was based almost completely on the use of meth, and they admitted at their depositions to using meth together. The district court granted the motion in part, ruling that Bates was prohibited from inquiring into Callahan's and Lopez-Bravo's prior use of drugs; however, he was not forbidden from adducing evidence that at the time of the occurrences either witness was in the possession of drugs as observed by a witness.

At trial, the State called Lopez-Bravo as a witness. Immediately upon his taking the stand and providing his name, Bates asked that the court advise Lopez-Bravo of his Fifth Amendment right against self-incrimination. The court declined to do so at the time, indicating that it would wait to do so until the issue was raised by a question. Lopez-Bravo was then questioned by the State and answered all of the questions posed to him on direct examination. The State did not inquire into any meth use by Lopez-Bravo.

During cross-examination, however, Bates began questioning Lopez-Bravo about meth. Lopez-Bravo denied going to Bates' parents' residence to deliver drugs to Callahan and denied hiding drugs on the property. Lopez-Bravo admitted that he was under the influence of meth on February 8, 2014 and had smoked meth 3 days before trial. Bates' counsel then asked Lopez-Bravo who he smoked meth with 3 days prior, and the court interjected and advised Lopez-Bravo of his Fifth Amendment right to remain silent and avoid self-incrimination. The court then sustained the State's relevance objection to the question. Bates continued cross-examining Lopez-Bravo on other topics and then asked if he deals or sells meth. The court again advised Lopez-Bravo that if he answers the question, he may be providing information to the State that could be used to

prosecute him and that he has a right to remain silent. As a result, Lopez-Bravo invoked his right to remain silent. Bates then stated that he had no further questions for the witness.

The jury ultimately found Bates guilty of second degree assault, third degree domestic assault, and criminal mischief. The district court found that the domestic assault was a second offense and that Bates was a habitual criminal. Bates was sentenced to consecutive sentences of 18 to 20 years, 20 months to 60 months, and 90 days. He timely appeals his conviction and sentence as to the second degree assault aggravated upon a habitual criminal count only.

## ASSIGNMENTS OF ERROR

Bates assigns that (1) the district court committed plain error by permitting Lopez-Bravo to invoke his Fifth Amendment privilege against self-incrimination in the presence of the jury and (2) he received ineffective assistance of counsel.

## ANALYSIS

*Invocation of Fifth Amendment Privilege.*

Bates challenges the district court's decision to allow Lopez-Bravo to invoke his right against self-incrimination in the presence of the jury. He recognizes that because he failed to object at trial, we are limited to a review for plain error.

Failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012). However, an appellate court may, at its option, notice plain error. See *id*. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id*.

The Nebraska Evidence Rules, contained in chapter 27 of the Nebraska Revised Statutes, as well as our case law interpreting those rules, direct trial courts to avoid a jury's exposure to a witness' claim of privilege whenever possible. See *State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015). Section 27-513(2) provides that "proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury." Absent extraordinary circumstances, trial courts should exercise their discretion to forbid parties from calling witnesses who, when called, will only invoke a privilege. *State v. Draper, supra*.

In the present case, the district court was made aware of the intent to question Lopez-Bravo regarding meth, and thus, it was aware that the witness may need to invoke his right against self-incrimination. Nevertheless, the court did not definitively determine, outside the jury's presence, whether he would invoke such right. Even after Lopez-Bravo took the stand at trial and was sworn in, the court declined to address the issue until it was raised during questioning. It would have been practicable to determine whether and to what extent Lopez-Bravo intended to remain silent outside the jury's presence. Because such a determination was not made, allowing the invocation of privilege in front of the jury violated § 27-513(2). The State agrees.

However, not all trial errors, even trial errors of constitutional magnitude, entitle a criminal defendant to the reversal of an adverse trial result. *State v. Draper, supra*. When determining whether an alleged error is so prejudicial as to justify reversal, courts generally consider whether the error, in light of the totality of the record, influenced the outcome of the case. *Id*. It is only

prejudicial error, that is, error which cannot be said to be harmless beyond a reasonable doubt, which requires that a conviction be set aside. *Id.*

In *Draper*, the Supreme Court found error in allowing a witness to invoke her right to remain silent in the presence of the jury. In addressing whether the error was nevertheless harmless, the court adopted the analysis from *Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), which described 2 circumstances when the prosecutor's calling a witness to the stand with the knowledge that the witness would invoke the privilege against self-incrimination constituted reversible error. The first category was based upon prosecutorial misconduct and involved situations when the prosecution makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege. That is not the case here. There is no evidence the State was attempting to build its case out of inferences from use of the privilege. The State called Lopez-Bravo to the stand in order to ascertain his non-privileged testimony as a fact witness and victim of Bates' assault.

The second category involves cases in which inferences from a witness' refusal to answer added critical weight to the State's case in a form not subject to cross-examination. See *State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015). In addressing this prong, appellate courts are to consider the invocation of the privilege within the entire context of the case and other evidence presented to the jury. See *id.* Other factors to be considered are whether the State knew the witness would invoke the privilege, the number of questions that elicit an assertion of the privilege, whether the inferences are merely cumulative of other evidence, whether the inferences relate to central or collateral matters, whether either side attempted to draw adverse inferences in closing argument or at any other time during trial, and whether the jury was instructed not to draw an inference from the witness' refusal to testify. *Id.*

In the present case, Lopez-Bravo answered all of the questions asked of him on direct examination, and Bates was not prohibited from cross-examining him as to his testimony. The privilege was invoked on only one occasion during cross-examination when Bates' counsel asked Lopez-Bravo whether he deals or sells meth.

The purpose of § 27-513(2) is to prevent the jury from drawing an unfavorable inference from a witness' assertion of privilege. See *id.* The inference the jury could draw from Lopez-Bravo's invocation of his right to remain silent was that he is, in fact, a drug dealer, an inference that would tend to discredit him and work in Bates' favor. More importantly, this inference would support Bates' position that Lopez-Bravo and Callahan were arguing about drug money and the fight occurred because Bates was defending Callahan and himself. Thus, the inference from Lopez-Bravo's refusal to answer that single question did not add "critical weight" to the State's case in a form not subject to cross-examination and was not prejudicial to Bates. Accordingly, we find that the error in allowing Lopez-Bravo to invoke his right to remain silent in the presence of the jury is harmless beyond a reasonable doubt.

Bates also asserts that allowing Lopez-Bravo to invoke his right to remain silent in the presence of the jury violated his Sixth Amendment right to confrontation and cross-examination. The Confrontation Clauses of U.S. Const. amend. VI and Neb. Const. art. I, § 11, guarantee the right of an accused in a criminal prosecution to be confronted with the witnesses against him or her. The purpose of the right of confrontation is primarily to guarantee a right for the accused to

cross-examine witnesses against him or her. *State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015).

The Nebraska Supreme Court has found these rights to be implicated when a question is posed to a witness that he refuses to answer, and his refusal implies the answer. The opposing party, however, is unable to cross-examine the witness as to that statement because he gave no testimony upon which a cross-examination could be based. See *State v. Draper, supra*. The danger is that a jury may properly infer the veracity of the statement without the opportunity for cross-examination. *Id*.

In the present action, the question at issue is whether Lopez-Bravo sold meth. The question was posed by Bates, the party now contending that he was denied his right to confront and cross-examine Lopez-Bravo because he invoked his right to remain silent. Bates could not have been prejudiced from Lopez-Bravo's refusal to answer because the inference would be that he did, indeed, sell meth. Since this would support Bates' version of the incidents that led to the assault, no violation of his constitutional right exists. Furthermore, any alleged error was invited by Bates when he asked the question and a party cannot assert plain error which he invited. See *State v. Gutierrez*, 260 Neb. 1008, 620 N.W.2d 738 (2001).

*Ineffective Assistance of Counsel.*

Bates asserts that he received ineffective assistance of trial counsel when counsel failed to move to strike Lopez-Bravo's testimony. We disagree.

A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *State v. Huston*, 291 Neb. 708, 868 N.W.2d 766 (2015). To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *Id*. To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013). To show prejudice, the defendant must demonstrate reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. Deficient performance and prejudice can be addressed in either order. *Id*.

Bates contends that his trial counsel's performance was deficient because he failed to move for an order striking Lopez-Bravo's testimony after his invocation of the Fifth Amendment in front of the jury. Citing *U.S. v. Wilmore*, 381 F.3d 868 (9th Cir. 2004), Bates claims that when a government witness invokes the Fifth Amendment, the trial court should strike the witness' direct testimony unless the refusal to testify concerns collateral matters. Brief for appellant at 12. Striking the witness' testimony is the remedy for when the invocation of the Fifth Amendment violates the defendant's Sixth Amendment rights to confront and cross-examine the witnesses against him.

Having determined above that Bates' Sixth Amendment rights to confront and cross-examine Lopez-Bravo were not violated, counsel was not ineffective in failing to move to strike the testimony. We therefore find no merit to Bates' claim that he received ineffective assistance of counsel.

## CONCLUSION

We find that the district court erred in allowing the witness to invoke his right against self-incrimination in the presence of the jury but find such error to be harmless beyond a reasonable doubt. Further, Bates' trial counsel was not ineffective for failing to move to strike the witness' testimony. We therefore affirm the conviction and sentence.

AFFIRMED.